

**FILED**

Mar 30 2015, 10:28 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Robert D. King, Jr. | Gregory F. Zoeller |
| David R. Thompson | Attorney General of Indiana |
| The Law Office of Robert D. King, Jr., P.C. | |
| Indianapolis, Indiana | Larry D. Allen |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paul D. Mobley, | March 30, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1405-CR-343 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable H. Patrick Murphy, Master Commissioner |
| *Appellee-Plaintiff* | Case No. 49F07-1203-CM-015059 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Paul D. Mobley appeals his conviction for Class A misdemeanor patronizing a prostitute. Mobley argues that the evidence is insufficient to sustain his conviction or, in the alternative, that the State failed to rebut his defense of

entrapment. We find that the evidence is sufficient to prove that Mobley knowingly agreed to pay an undercover detective $20 to perform fellatio on him. We also conclude that according to the Indiana Supreme Court's recent decision in *Griesemer v. State*, --- N.E.3d ---, 2015 WL 970660 (Ind. 2015), because a reasonable trier of fact could have found the State proved, beyond a reasonable doubt, that the police did not induce Mobley, his entrapment defense fails. We therefore affirm his conviction for Class A misdemeanor patronizing a prostitute.

# Facts and Procedural History

On March 6, 2012, Indianapolis Metropolitan Police Department Detective Tabatha McLemore was posing as a prostitute on East Washington Street in Indianapolis. Tr. p. 7-8. Detective McLemore performs approximately 100 undercover investigations a year where she poses as a prostitute. *Id.* at 6. Around noon, Mobley drove slowly past Detective McLemore, staring at her "the whole time." *Id.* at 9. Mobley then stopped his car in the middle of the next street near Detective McLemore. *Id.* Detective McLemore walked up to Mobley and asked, "What's up?" State's Ex. 1 (audio recording); Tr. p. 15. In response, Mobley asked Detective McLemore, "How much?" State's Ex. 1; Tr. p. 11, 15. Detective McLemore told Mobley it would be "twenty for some head." State's Ex. 1; Tr. p. 11. Mobley "shook his head 'yes'" and then "did a head nod" to the right to indicate that Detective McLemore should get into his passenger seat. *Id.* at 11, 15, 24-25. Detective McLemore told Mobley to pick

her up in the nearby alley off East Washington Street so that the police would not see them. State's Ex. 1; Tr. p. 11.

[3] IMPD Detective Stephen Buchanan was stationed nearby in an unmarked police car with police lights in the un-tinted windshield. He was wearing a protective vest with the word "police" in large block letters on the front. When Detective Buchanan received a signal that Detective McLemore had been propositioned, he "immediately drove . . . toward[] Oakland Street" and saw Mobley driving toward him. Tr. p. 38-39. Detective Buchanan and Mobley "looked right at each other." *Id.* at 39. Mobley then turned toward Detective McLemore and said "never mind," to which Detective McLemore replied, "too late." State's Ex. 1; Tr. p. 11-12, 15-16, 39. Mobley was arrested and charged with Class A misdemeanor patronizing a prostitute. After his arrest, Mobley told Detective McLemore that he had a "moment of weakness." *Id.* at 16, 40-41.

[4] After a bench trial, Mobley was convicted of Class A misdemeanor patronizing a prostitute. He was sentenced to 365 days in the Indiana Department of Correction with credit for four days served and 361 days suspended. *See* Appellant's App. p. 43 (Abstract of Judgment).

[5] Mobley now appeals.

# Discussion and Decision

Mobley makes two arguments on appeal. First, he argues that the evidence is insufficient to sustain his conviction. In the alternative, he argues that the State failed to rebut his defense of entrapment.

# I. Sufficiency of Evidence

Mobley first challenges the sufficiency of the evidence to support his conviction. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the trial court's ruling and will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* It is not necessary for the evidence to overcome every reasonable hypothesis of innocence. *Id.* The evidence will be deemed sufficient if an inference may reasonably be drawn from it to support the conviction. *Id.*

When Mobley committed the offense, Indiana Code section 35-45-4-3 provided, in relevant part, that a person commits Class A misdemeanor patronizing a prostitute if that person "knowingly or intentionally pays, or offers or agrees to pay, money or other property to another person . . . on the understanding that the other person will engage in, sexual intercourse or deviate sexual conduct with the person or with any other person . . . ." Ind. Code Ann. § 35-45-4-3(1) (West 2012). The charging information alleges that Mobley knowingly offered or agreed to pay "United States currency" to Detective McLemore on the

understanding that she would engage in deviate sexual conduct—specifically, fellatio—with him. Appellant's App. 18 (capitalization omitted).

[9] Mobley first argues that the evidence is insufficient to prove that he knowingly agreed to pay "twenty for some head." He concedes that there is evidence in the record that he nodded his head; however, he claims that "an ambiguous nod of the head cannot constitute proof beyond a reasonable doubt that [he] made an agreement." Appellant's Br. p. 9.

[10] Here, Detective McLemore did not describe Mobley's head nod as ambiguous or equivocal. *Cf. Lukas v. State*, 165 Ind. App. 50, 330 N.E.2d 767, 770 (1975) (the witness described the defendant's head nods as: "The same, nothing verbal, no affirmation, no denial, just that he acknowledge[d] what I was talking about, that he understood it."). Rather, Detective McLemore testified that Mobley nodded his head "yes" when she said it would be "twenty for some head." Tr. p. 11. When defense counsel pressed Detective McLemore about whether Mobley really meant "yes" by his head nod, the following colloquy occurred:

> Q: Alright again, you're . . . not in a position to get inside [Mobley's] head to know what he meant by the nod, right?
>
> A: Even babies know that a head shake "yes," means yes.
>
> Q: Well, head shakes can mean a lot of different things like I'm pondering that idea, correct?
>
> A: Not in this situation.

*Id.* at 24. Moreover, when Mobley later saw the other detective approach in his car, Mobley turned toward Detective McLemore and said "never mind," which suggests that Mobley indeed made an agreement with Detective McLemore but

then changed his mind.  Mobley's argument that his head nod "yes" was not an agreement is merely an invitation for us to reweigh the evidence, which we will not do.  *See* Tr. p. 44-46 (defense counsel's closing argument making same argument as here).  The evidence is sufficient to prove that Mobley knowingly made an agreement.[1]

[11]  Mobley next argues that the evidence is insufficient to prove that he agreed to pay "United States currency," as the charging information alleges.  Appellant's Br. p. 12.  The record shows that Mobley drove slowly past Detective McLemore, staring at her "the whole time."  Mobley then stopped his car in the middle of the street near Detective McLemore.  Detective McLemore walked up to Mobley and asked, "What's up?"  In response, Mobley asked Detective McLemore, "How much?"  Detective McLemore told Mobley it would be "twenty for some head."  Mobley makes much of the fact that Detective McLemore did not say "dollars" or "bucks" after twenty, as happened in other prostitution-sting cases.  Mobley speculates that "'twenty' can mean many things."  *Id.* at 13.   However, given the circumstances of this case, it was reasonable for the trier of fact to infer that "twenty" here meant twenty dollars.  Any other interpretation is a request to reweigh the evidence.  *See* Tr. p. 44

---

[1] Mobley cites *Ferge v. State*, 764 N.E.2d 268 (Ind. Ct. App. 2002), as support here.  The issue in *Ferge* was whether the State negated the defendant's defense of entrapment to Class A misdemeanor patronizing a prostitute.  The defense of entrapment is an affirmative defense requiring admission to the elements of the crime.  *See Hoskins v. State*, 563 N.E.2d 571, 576 (Ind. 1990) (holding that entrapment is a true affirmative defense that admits the facts of the crime but contends that the knowing or intentional acts were excused or justified).  However, Mobley argues that the evidence does not satisfy the elements.

(defense counsel's closing argument making same argument as here). The evidence is sufficient to prove that Mobley agreed to pay United States currency.

[12] Finally, Mobley argues that the evidence is insufficient to prove that he understood that Detective McLemore would engage in fellatio with him. Detective McLemore told Mobley that it would be "twenty for some head," to which Mobley nodded his head yes and then nodded his head a second time to indicate that Detective McLemore should get into his car. Detective McLemore testified at trial that "head" is street terminology for fellatio. Tr. p. 17. Furthermore, Detective McLemore testified that since she had been working vice for the past five and one-half years, she had never used the term fellatio when working undercover as a prostitute. *Id.* at 29. She explained that she uses the term "head" because it is the term that solicitors use. *Id.* at 31. Detective McLemore said in all her years in vice, she had never seen anyone mistake the word "head" for a different meaning. *Id.* In fact, Mobley did not ask for clarification of what she meant by "head." *Id.* at 32. Given the circumstances of this case, it was reasonable for the trier of fact to infer that Mobley understood that "head" meant fellatio. Any other interpretation is a request to reweigh the evidence. *See* Tr. p. 44-45 (defense counsel's closing argument making same argument as here). The evidence is sufficient to prove that Mobley understood that Detective McLemore would engage in fellatio with him.

# II. Entrapment

In the alternative, Mobley argues that the State failed to rebut his defense of entrapment. The Indiana Supreme Court recently addressed the defense of entrapment in *Griesemer*. We review a claim of entrapment using the same standard that applies to other challenges to the sufficiency of evidence. *Griesemer*, 2015 WL 970660, *2.

As our Supreme Court explained in *Griesemer*:

> The government may use undercover agents to enforce the law. Indeed, undercover agents can be invaluable in the prevention, detection, and prosecution of crime, and "it is the duty of conscientious and efficient law enforcement officers to make such efforts." But their tactics must be measured; we do not tolerate government activity that lures an otherwise law-abiding citizen to engage in crime. After all, the job of law enforcement is to catch established criminals, not manufacture new ones. Our entrapment defense aims to sort the two.

*Id.* (citations and quotation omitted). Entrapment in Indiana is statutorily defined:

> (a) It is a defense that:
>
> > (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and
> >
> > (2) the person was not predisposed to commit the offense.
>
> (b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Ind. Code § 35-41-3-9. A defendant does not need to formally plead the entrapment defense; rather, it is raised, often on cross-examination of the

State's witnesses, by affirmatively showing that the police were involved in the criminal activity and expressing an intent to rely on the defense. *Griesemer*, 2015 WL 970660, *2. Police are involved in the criminal activity only if they "directly participate" in it. *Id.* The State then has the opportunity for rebuttal, and its burden is to disprove one of the statutory elements beyond a reasonable doubt. *Id.* Thus, there is no entrapment if the State shows *either* (1) there was no police inducement *or* (2) the defendant was predisposed to commit the crime. *Id.*

To rebut the first element, inducement, the State must prove that police efforts did not produce the defendant's prohibited conduct because those efforts lacked "a persuasive or other force." *Id.* at *3 (quotation omitted).

At issue in *Griesemer* was whether the defendant was induced. *Griesemer* involved the same undercover officer as in this case, Detective Tabatha McLemore. Detective McLemore was posing as a prostitute on a corner on the eastside of Indianapolis when she noticed the defendant driving past and staring at her. He looped around the block and returned a few minutes later, stopping near her just before a stop sign. Through his open car window, the defendant asked Detective McLemore if she needed a ride. Detective McLemore declined, saying she "was trying to make some money." *Id.* at *1. The defendant nodded his head toward his passenger seat, which Detective McLemore understood as an invitation for her to get in his car. She then asked him how much money he had, and the defendant again nodded toward his passenger seat. When she asked him about money a second time, he told her

he had twenty dollars. Detective McLemore said she could "do head" for that amount, and the defendant nodded his head yes, and for a third time nodded toward his passenger seat. *Id.* But instead of getting in his car, she told him to pick her up just down the street. He nodded yes, and proceeded along the same route he had taken when he initially saw Detective McLemore. A police car stopped the defendant; he was arrested and charged with Class A misdemeanor patronizing a prostitute.

[17] Our Supreme Court concluded that the State presented sufficient evidence for the trier of fact to reasonably determine that Detective McLemore's policing efforts did not produce the defendant's criminal conduct. *Id.* at *4. The Court stated that the evidence most favorable to the verdict shows that the defendant "stared at Detective McLemore from the road before turning around, he stopped his car near her to initiate their conversation, and he twice nodded his head to invite her into his car, all *before* she mentioned the opportunity to exchange money for a sexual act." *Id.* The Court found that this was not an explicit directive or order. *Cf. Albaugh v. State*, 721 N.E.2d 1233 (Ind. 1999) (finding entrapment where a police officer told the defendant, who had been drinking, "you've got to move [your truck] and you've got to move it now"). In addition, the Court found that Detective McLemore "did not exert a persuasive or other force over [the defendant]; instead, she merely afforded him 'an opportunity to commit the offense,' which the statute expressly declares 'does not constitute entrapment.'" *Griesemer*, 2015 WL 970660, *4 (quoting Ind. Code § 35-41-3-9(b)). The Court therefore affirmed the defendant's conviction.

[18]     We reach the same conclusion here.  That is, the State presented sufficient evidence for the trier of fact to reasonably determine that Detective McLemore's policing efforts did not produce Mobley's criminal conduct.  The evidence most favorable to the verdict shows that Mobley drove slowly past Detective McLemore, staring at her the whole time; he then stopped his car in the middle of the street near her and asked, "How much?"—all *before* Detective McLemore mentioned the opportunity to exchange money for a sexual act.  Detective McLemore did not give Mobley an explicit directive or order and did not exert a persuasive or other force over Mobley; rather, she merely afforded him an opportunity to commit the offense, which Indiana Code section 35-41-3-9(b) expressly declares "does not constitute entrapment."

[19]     As our Supreme Court said in *Griesemer*,

> That the crime itself may be tempting, without more, is not inducement.  Indeed, if we were to find entrapment on these facts, we would effectively put an end to prostitution stings.  We are not willing to so limit the activity of undercover officers to the detriment of safety and quality of life in many neighborhoods.

2015 WL 970660, *4.  Because a reasonable trier of fact could have found the State proved, beyond a reasonable doubt, that the police did not induce Mobley, his entrapment defense fails.[2]  We therefore affirm his conviction for Class A misdemeanor patronizing a prostitute.

---

[2] We therefore do not address the question of Mobley's predisposition to commit the crime.

Affirmed.

Baker, J., and Riley, J., concur.